**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ANTONIO LEONARD TNT PRODUCTIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-13-3486 |
| GOOSSEN-TUTOR PROMOTIONS, LLC, AND DAN GOOSSEN, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION DENYING MOTION FOR RECONSIDERATION**

The plaintiff, Antonio Leonard TNT Productions, LLC ("Leonard Productions"), moved for reconsideration of the court's memorandum and opinion granting the motion filed by the defendants, Goossen-Tutor Promotions, LLC ("GTP") and its president, Dan Goossen, to compel arbitration of the parties' disputes and to dismiss this suit in favor of the arbitration. The motion to reconsider is fully briefed; GTP responded,[1] Leonard Productions replied, GTP sur-replied, and Leonard Productions filed a supplemental response, to which GTP responded. (Docket Entry Nos. 44, 47, 48, 49, 50, 51).

Based on a careful review of the motion, the parties' briefs and submissions, the record, and the applicable law, the court denies the motion for reconsideration and enters an order of dismissal in favor of the arbitration. The reasons are explained below.

---

[1] On September 30, 2014, counsel for the defendants informed the court of defendant Dan Goossen's recent death. (Docket Entry No. 46).

**I.     Background**

Leonard Productions alleged that in 2011, it entered into an oral copromotional agreement with GTP under which it became GTP's partner to promote boxer Andre Ward. Leonard Productions alleged that the Leonard/GTP partnership decided to promote and hold six boxing matches for boxer Andre Ward over three years, with GTP and Leonard Productions sharing revenues and losses equally. (Docket Entry No. 19, Ex. 7 at 4). GTP and Ward signed a written Exclusive Promotional Agreement that Leonard Productions alleges resulted from these discussions. (Docket Entry No. 12 at 4). The Exclusive Promotional Agreement stated that GTP was Ward's exclusive promoter, California law applied, and the parties agreed to arbitrate "[a]ny controversies and/or disputes concerning and/or arising under this Agreement and/or arising under the Addendum" before the California State Athletic Commission ("CSAC"). (Docket Entry No. 19, Ex. 2 at 17). The Agreement included a separate Addendum required by the CSAC in all boxing promotional contracts, stating that "controversies concerning the validity and/or enforceability of the promotional contract and this addendum shall be submitted for arbitration." (Docket Entry No. 19, Ex. C).

Leonard Productions was not a party to, or mentioned in, the written Exclusive Promotional Agreement or its Addendum. Leonard Productions explains this omission by the fact that it was not registered as a boxing promoter with the CSAC. (Docket Entry No. 19, Ex. 7 at 4; Docket Entry No. 27 at 8–9). Goossen told Leonard in an e-mail that "[a]s you and I have discussed in the past and recently, to be listed on the [A]greement (which is no problem) you need to become a licensed promoter in California, which you've said is not a problem for you not to be listed on the [A]greement." (*Id.*). Although Leonard Productions was not included in the Exclusive Promotional Agreement, Leonard Productions was involved in the discussions on the Exclusive Promotional Agreement and claims that Ward would not have signed the Agreement without Leonard

2

Productions's involvement. (Docket Entry No. 1, Ex. A-3 at 3–4). GTP and Ward allegedly treated Leonard Productions as Ward's copromoter under the oral partnership agreement between GTP and Leonard Productions and the Exclusive Promotional Agreement between GTP and Ward. (*Id.*).

After two Ward matches, GTP informed Leonard Productions that it would not copromote Ward. The relationship between GTP and Ward had deteriorated, leading to arbitration between them before the CSAC. (Docket Entry No. 1, Ex. 4). Leonard Productions sued GTP and Goossen in Texas state court, claiming that they had breached their copromotional agreement with, and fiduciary duty to, Leonard Productions. (*Id.*). GTP and Goossen timely removed on the basis of diversity jurisdiction and moved to dismiss for want of personal jurisdiction and to compel arbitration. The court denied the defendants' motion to dismiss on jurisdictional grounds but granted the motion to compel, finding that Leonard Productions was bound to arbitrate its claims under estoppel principles. This motion for reconsideration followed.

## II.     The Applicable Legal Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) (stating that "the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration"). A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A motion seeking reconsideration of an order or judgment is generally considered a motion to alter or amend under Rule 59(e) if it seeks to change the order. *T-M Vacuum Products, Inc. v. TAISC, Inc.*, No. 07-cv-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e)

motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)). Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised before the entry of the judgment or order. 11 WRIGHT, MILLER, AND KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127–28 (footnotes omitted).

**III.    Analysis**

    **A.    Leonard Productions Is Bound to Arbitrate**

Leonard Productions argues that, contrary to this court's conclusion, it cannot be bound to the arbitration agreement contained in the Exclusive Promotional Agreement or its Addendum. A nonsignatory to an arbitration agreement may be required to arbitrate under agency or contract-law principles, including estoppel. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) ("Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary.") (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

"Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'" *Bridas*, 345 F.3d at 361–62 (quoting *DuPont*, 269 F.3d at 199); *cf. Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) (binding a nonsignatory to a forum-selection clause under a direct-benefits estoppel theory). Courts have held nonsignatories bound by an arbitration clause in an agreement when the nonsignatory seeks benefits under that agreement, particularly if it plays a central role in carrying out the agreement's underlying obligations. *See AHTNA Gov't Servs. Corp. v. 52 Rausch, LLC*, No. 03-00130, 2003 WL 403359 (N.D. Cal. Feb. 19, 2013); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1056 (D. Or. 2004); *Wood v. PennTex Resources, L.P.*, 458 F. Supp. 2d 355, 372–73 (S.D. Tex. 2006); *World Grp. Sec., Inc. v. Allen*, No. CV07-1657-PHX-JAT, 2007 WL 4168572, at *4 (D. Ariz. Nov. 20, 2007).

In its Memorandum and Opinion, this court reviewed direct-benefits estoppel cases and noted that while the *Bridas* court had declined to apply direct-benefits estoppel in part because the nonsignatory had not sued the signatory under the agreement containing the arbitration clause and had not thereby "exploited" the agreement containing the clause, "[o]ther cases have not focused on whether the nonsignatory filed a suit or claim against the signatory based on the agreement containing the arbitration clause but . . . focused instead on whether the evidence showed that the nonsignatory received direct and substantial benefits from that agreement." *Wood*, 458 F. Supp. 2d at 368. In analyzing direct-benefits estoppel, "[t]he keys are whether the nonsignatory demanded and received substantial and direct benefits under the contract containing the arbitration clause, by suing the signatory under that contract or otherwise; the relationship between the claims to be arbitrated and the contract; and whether equity prevents the nonsignatory from avoiding the arbitration clause that was part of that contract." *Id.* at 371.

5

Leonard Productions argues that it did not rely on the Exclusive Promotional Agreement in its complaint, but instead on tort law and on the alleged separate oral copromotional agreement signed with GTP. (Docket Entry No. 45 at 11). This court considered and rejected this argument in granting the motion to compel arbitration. Leonard Productions presents no basis to reach a different result on reconsideration.

Leonard Productions sought relief against GTP that depends on, and is covered by, the Exclusive Promotional Agreement between GTP and Ward. Leonard Productions alleged that GTP had orally agreed to copromote Ward with Leonard Productions. GTP's right to promote Ward — and therefore the copromotion that Leonard Productions alleged — depended on, and was controlled by, the Exclusive Promotional Agreement. The alleged promoters had a right to the revenues Leonard Productions claims it was to share with GTP only under the Exclusive Promotional Agreement. According to Leonard, GTP and Goossen agreed in their discussions that although Leonard Productions was not listed in the Exclusive Promotional Agreement because it was not licensed as a California boxing promoter, it was to be treated as a partner of GTP and a copromoter of Ward under that Agreement. (Docket Entry No. 19, Ex. 7 at 4; Docket Entry No. 1, Ex. A-3).

In short, although Leonard Productions contends that it is suing only under its alleged oral agreement with GTP to copromote Ward, Leonard Productions alleged that it performed GTP's obligations under the Exclusive Promotional Agreement and the record showed that Leonard Productions claimed benefits under that Agreement. Leonard Productions did not "disclaim any reliance on" this Agreement. To the contrary, Leonard Productions invoked the benefits of that Agreement. *Cf. Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 468, 474–75 (5th Cir. 2010).

6

According to Leonard Productions, it also played a critical role in carrying out the work of promoting Ward's fights. (Docket Entry No. 17 at 2–3). Leonard Productions made some or all of the initial payments due to Ward under the Exclusive Promotional Agreement; received a 50 percent share of the net revenues from the first match organized under the Agreement; and alleged that it was owed 50 percent of the net revenues from the five other fights.

Leonard Productions has failed to show a manifest error of law or fact in the court's conclusion that it sought benefits under the Exclusive Promotional Agreement and was bound under direct-benefits estoppel to its arbitration clause.

### B. The Claims Are Within the Arbitration Clause

Leonard Productions also asks the court to reconsider its conclusion that the claims asserted in this suit fall within the scope of the arbitration clause in the Exclusive Promotional Agreement. Leonard Productions agrees that the Exclusive Promotional Agreement's arbitration clause is broad. But it argues that the Addendum to the Exclusive Promotional Agreement contains a narrower arbitration clause, that the narrower clause governs, and that it does not encompass the claims Leonard Productions asserts.

The Exclusive Promotional Agreement states that a broad range of "controversies and/or disputes concerning and/or arising under this Agreement" must be "conducted in accordance with the California State Athletic Commission: Addendum to Promotional Contract, Sections C(1) and C(2) which is incorporated herein. (Docket Entry No. 19, Ex. 2 at 17). Section C(2) of the Addendum states that "controversies concerning the validity and/or enforceability of the promotional contract and this addendum shall be submitted for arbitration." (Docket Entry No. 19, Ex. C). The Addendum also states that "[a]ny and all inconsistences or ambiguities between the promotional

7

agreement and this addendum which is attached to it and made a part of it shall be resolved in favor of this addendum, the Boxing Act, and the commission's rules." (*Id.*).

"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998) (citing *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.,* 42 F.3d 1292, 1295 (9th Cir. 1994) (comparing "relating to" language with "arising out of" language)). "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* An "arbitration clause that cover[s] disputes 'arising under' an agreement, but omit[s] reference to claims 'relating to' an agreement, cover[s] only those disputes 'relating to the interpretation and performance of the contract itself.'" *Tracer Research Corp.*, 42 F.3d at 1295 (quoting *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)). Arbitration clauses that also cover disputes "concerning this agreement" are construed broadly. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 764 (S.D.N.Y. 2013), appeal dismissed (Oct. 7, 2013).

After this court issued its Memorandum and Opinion, a federal district court in California examined the scope of the Exclusive Promotional Agreement and the Addendum in a dispute between Ward, Goossen, and GTP. (Docket Entry No. 50, Ex. 1). That court found that while the Exclusive Promotional Agreement contained a broad agreement to arbitrate, the scope of the Addendum's clause was narrower. The court found that the provisions were in conflict and created an ambiguity as to the scope of the parties' agreement to arbitrate. Applying California principles of contract interpretation, as called for in the Agreement, the court reasoned that applying the

8

broader arbitration clause contained in the Exclusive Promotional Agreement would make much of the Addendum's arbitration clause meaningless, that the Addendum required that ambiguities be resolved in its favor, and that the Exclusive Promotional Agreement should be construed against GTP, the drafting party. The court concluded that the Addendum's narrower arbitration clause applied and that Ward's claims that GTP and Goossen violated certain state financial-disclosure requirements for the boxing industry did not concern the "validity and/or enforceability" of the Exclusive Promotional Contract or the Addendum. (Docket Entry No. 50, Ex. 1).

This court is not persuaded that the two arbitration clauses are in conflict in a way that gives rise to ambiguity. The Addendum contains language the CSAC requires for all boxing-promotion contracts executed in California. (Docket Entry No. 19, Ex. 3). By contrast, GTP and Ward, with Leonard's assistance, separately negotiated the Exclusive Promotional Agreement for their specific promotional arrangement. The Agreement's more expansive language is consistent with the conclusion that the parties intended to broaden the scope of the mandatory arbitration clause contained in the CSAC-prepared Addendum by also requiring arbitration of "any controversies and/or disputes concerning and/or arising under this Agreement and/or arising under the Addendum." (Docket Entry No. 19, Ex. 2). That is, the CSAC language is a required minimum for all contracts, which the parties cannot narrow but can contract to expand.

Reading the clauses together in this way gives both clauses full effect and makes neither meaningless. By contrast, reading the clauses so as to disregard the specifically negotiated language would disregard and eliminate key portions of the parties' agreement. And to the extent that this reading creates an ambiguity as to the scope of the parties' arbitration agreement, the FAA requires that such disputes be resolved in favor of arbitration, not against it. *See McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 984 (5th Cir. 1995) (holding that the FAA's mandate to resolve

ambiguities in favor of arbitration superceded the state's contract interpretation rule resolving any ambiguities against the drafter); *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir. 2006) ("Where the federal policy favoring arbitration is in tension with the tenet of *contra proferentem* for adhesion contracts, and there is a scope question at issue, the federal policy favoring arbitration trumps the state contract law tenet."); *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 396–97 (6th Cir. 2014) ("It is true that courts generally rely on the *contra proferentem* doctrine to resolve ambiguities against the drafter of the agreement. But where ambiguity in agreements involving arbitration exists, such as here, the strong presumption in favor of arbitration applies instead."); *Kassell v. Crafton*, No. A-12-CA-669 LY, 2013 WL 6709447, at *4 (W.D. Tex. Dec. 18, 2013) ("Further, when, as here, the FAA applies, California courts apply the principle that 'ambiguities in an arbitration clause are to be resolved in favor of arbitration, notwithstanding the California rule that a contract is construed most strongly against the drafter.'" (quoting *Erickson v. Aetna Health Plans of California*, 84 Cal. Rptr. 2d 76 (Cal. Ct. App. 1999))).

As the court noted in its earlier Memorandum and Opinion, "[t]he primary dispute is whether the Exclusive Promotional Agreement should be interpreted and executed as Leonard Productions alleges, effectively treating it as a party to that Agreement." This dispute clearly concerns the Exclusive Promotional Agreement and is easily within that contract's broad arbitration clause. The same result applies even under the narrower language of the Addendum's arbitration clause, which Leonard Productions urges the court to apply on reconsideration. Leonard Productions's claims about the enforceability of the Exclusive Promotional Agreement as between itself and GTP are within the scope of the arbitration clause in the Addendum and therefore arbitrable.

  **C.**  **The Arbitration Clause Designating the Forum is Enforceable**

Leonard Productions argues that if the parties' disputes must be arbitrated, the court should compel the parties to arbitrate under Texas law rather than before the CSAC. Leonard Productions asserts that the CSAC's docket of disputes between a boxer and a single promoter makes it unprepared to handle disputes of this complexity.

The arbitration clauses in the Exclusive Promotional Agreement and its Addendum require the parties' arbitration to be administered by the CSAC, under its rules. There is no basis in this record to find that the CSAC lacks the authority or ability to do so. The CSAC has authority to decide disputes between "boxers" and "promoters," and its definition of a "promoter" includes a "partnership." CAL. BUS. & PROF. CODE § 18622. Nor is it clear that the CSAC is unprepared to handle this dispute, which does not appear to be as complex as Leonard Productions states.

A court may not rewrite the parties' arbitration agreements. *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("[C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." (internal quotations omitted)); *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 496 (5th Cir. 2012) ("Thus, for the district court '[t]o substitute [its] own notion of fairness in place of the explicit terms of [the parties'] agreement would deprive them of the benefit of their bargain just as surely as if [the district court] refused to enforce their decision to arbitrate.'" (alterations in original)); *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.,* 817 F.2d 326, 334 (5th Cir. 1987) ("Because arbitration is a creature of contract, we cannot rewrite the agreement of the parties" to select a more convenient forum for the arbitration).

## III.     Conclusion

The motion for reconsideration, (Docket Entry No. 44), is denied. No party has identified reasons why the action should not be dismissed, rather than stayed, in favor of arbitration, given the fact that all issues are subject to arbitration. An order of dismissal is separately entered.

SIGNED on January 21, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge